**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

KRISTINA HAGGERTY,
Individually and on behalf of all others
similarly situated,
Plaintiffs,

v.

RELIANT PRO REHAB LLC, d/b/a
RELIANT REHAB,
Defendant.
_____.

Case No:   1:22-cv-11329-WGY

## PLAINTIFF'S UNOPPOSED MOTION AND SUPPORTING MEMORANDUM OF LAW FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT

Plaintiff Kristina Haggerty ("Named Plaintiff" or "Plaintiff Haggerty") and Defendant Reliant Pro Rehab LLC ("Reliant" or "Defendant") have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis, for meaningful monetary relief.  The settlement— which is the culmination of several different FLSA lawsuits, thorough investigation and discovery, and considerable negotiation with the assistance of private mediator A. Lee Parks—satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement.   It resolves a bona-fide dispute which the Parties reached after significant investigation and review of documentary evidence and payroll data.  The settlement was the result of arms-length negotiations assisted by a private mediator and between experienced counsel and provides great value to members of the collective.

Accordingly, Plaintiff Haggerty, on behalf of herself and others similarly situated, respectfully request that the Court enter an order: (1) approving the $3,400,000 settlement agreement attached hereto as **Exhibit 1,** (2) approving the service awards of $5,000 to named Plaintiff Haggerty and $3,000 each to plaintiffs Kendall, Wang, and Doherty, and (3) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees, plus reimbursement of costs and expenses of $72,478.00.

## FACTUAL AND PROCEDURAL BACKGROUND

Named Plaintiff brought this case as a collective action under the FLSA, 29 U.S.C. §§ 201 et seq. on behalf of herself and other therapists who have worked at skilled nursing facilities that contracted with Reliant to provide therapy services to their residents.[1] Plaintiffs contend that Reliant imposed unrealistic productivity requirements—often 90% or higher, that therapists routinely worked "off-the-clock" to meet, or at least try to meet these productivity requirements, and that this off-the-clock work has resulted in therapists regularly working more than 40 hours per workweek without being paid for all the hours they have worked. (See ECF No. 10, Amended Compl. ¶¶ 28-30). Plaintiffs further allege that Reliant had knowledge that this work was occurring and suffered or permitted the off-the-clock work. (ECF No. 10, ¶¶ 32-33). Reliant has vigorously contested these allegations and denied that it violated any wage laws. Reliant maintains that its productivity and efficiency requirements are easily attainable, viable expectations that do not require any therapists to work off the clock in order to meet.

On January 9, 2023, Named Plaintiff moved for the conditional certification of this case as a collective action (ECF No. 48). That motion was supported by declarations including from Michael Wang and Kristen Kendall, each of whom had previously filed separate FLSA actions against Reliant that they voluntarily dismissed in order to join this case. (See generally *Kendall v. Reliant Pro Rehab LLC*, Case No. 1:22-cv-02787 (D.N.J) and *Wang v. Reliant Rehabilitation Holdings, Inc*., et al., Case No. 3:22-cv-00258-MMD-CLB (D. Nev.) After briefing and an in-person hearing on Plaintiff's motion, the Court granted conditional certification on February 22, 2023 (ECF. No. 78). Notice was duly issued to thousands of potential plaintiffs on March 31, 2023, (ECF. No. 79), and there are 1,610 plaintiffs as of the date of filing this motion.

---

[1]    "Therapists" includes hourly-paid employees in these positions: occupational therapist, occupational therapy assistant, physical therapist, physical therapy assistant, and speech language pathologist.

Following the notice period, the parties agreed to mediate. (ECF. No. 113). In-person mediation was scheduled for August 8, 2023, (*id*.), and prior to that date Reliant provided time and pay data for the opt-in therapists, so that Plaintiffs' counsel could effectively assess their claims.

The parties did not reach a settlement during their August 8 mediation. However, Mediator Parks continued to assist the parties in several additional weeks of negotiation until a settlement in principle was ultimately reached, providing—subject to this Court's approval—for a payment of $3.4 million to the collective in exchange for the release and dismissal of their claims. A copy of the parties' settlement agreement is attached hereto as **Exhibit 1**.

<u>**SUMMARY OF THE SETTLEMENT TERMS**</u>

**I.     <u>The Settlement Fund</u>**

The Settlement Agreement establishes a fund of $3,400,000.00 (the "Gross Settlement Amount") from which eligible opt-ins can claim settlement awards. Ex. 1 ¶ 2(j). The Fund covers any Court-approved service awards to Plaintiffs and attorney fee and expense payments to Plaintiffs' counsel. The portion of the settlement fund remaining after the payment of Court approved attorney's fees and service awards is the "Net Settlement Amount." Ex. 1 ¶ 2(k).

**II.    <u>Eligible Employees</u>**

Under the settlement agreement, each one of the 1,610 opt-in plaintiffs is entitled to a share of the settlement proceeds, pursuant to the allocation formula laid out in the settlement agreement.

**III.   <u>Payment Plan and Timing</u>**

The settlement shall be funded and distributions made in ten equal quarterly installments, beginning on March 15, 2024 and ending on June 15, 2026. Pursuant to the settlement agreement, Reliant has agreed to pay for the administration of this settlement, separate and apart from the $3,400,000 Gross Settlement Amount. Accordingly, any additional administrative costs arising from the fact that payments are being made to plaintiffs over time through multiple distributions will not reduce the allocations to the opt-ins from the settlement fund.

IV.    **Allocation**

All Settlement Awards are based on Defendant's timekeeping, payroll, and/or other records. The net settlement payment shall be allocated to the Plaintiffs and Settlement Members according to the following formula: Each Plaintiff's and Settlement Member's settlement payment shall be calculated by dividing the respective individual's Total W-2 Earnings earned (as of the date Defendant provided data to Collective Counsel in June 2023) by the total W-2 earnings for all Plaintiffs and Settlement Members in the same time period to come up with a settlement percentage. The settlement percentage shall be multiplied by the total net settlement amount to determine the settlement payment amount for each Plaintiff and Settlement Member.

V.    **Service Awards**

The settlement agreement provides that, subject to Court approval, Named Plaintiff Kristina Haggerty will receive a service payment of $5,000, and Plaintiffs Michael Wang, Matt Doherty, and Kristen Kendall each receive service payments of $3,000, with such amounts all to be taken from the Gross Settlement Amount. *See* Ex. 1 ¶ 16(a).

Named Plaintiff Haggerty assisted counsel in the investigation of the claims, provided a supporting declaration in support of the motion for conditional certification (ECF No. 48-6), responded to written and document discovery prior to mediation, and made herself available during mediation. Plaintiff Matt Doherty also served for as a time as a Named Plaintiff in this action, though he was later dismissed from that role (but not the case) because he did not work for Reliant in Massachusetts. (*See, e.g.* ECF No. 62-1, 5:8-5:16).

Plaintiffs Wang and Kendall, as noted above, each served as named Plaintiffs in their own separate lawsuits challenging Reliant's pay practices. Each of these cases was asserted on a collective basis, but Plaintiffs Wang and Kendall each chose to voluntarily dismiss those actions and join in and assist in this litigation, in order to avoid the costs and inefficiencies that would have resulted from having parallel cases asserting substantially overlapping claims and attempting to represent the same

universe of potential plaintiffs.  Plaintiffs Wang and Kendall each also submitted declarations in support of Plaintiffs' motion for conditional certification and helped Plaintiffs' counsel prosecute this case on behalf of the collective. See ECF No. 48-6, ECF No. 48-52; **Ex. 4.** Declaration of Jerry Martin ("Martin Dec.") ¶¶ 23-26.

**VI.**    <u>**Settlement Claims Administration**</u>

As noted above, Reliant has agreed to separately pay for settlement administration fees, so those costs **will not** come out of the Gross Settlement Amount.  *Id*.

**VII.**    <u>**Attorneys' Fees and Litigation Costs**</u>

Under the Settlement Agreement, and subject to Court approval, Plaintiffs' Counsel seeks payment of $1,133,333.33 (one-third of the $3,400,000.00 settlement) as attorneys' fees, plus reimbursement of $72,478.00. which represents reasonable out-of-pocket expenses incurred in litigating and resolving this matter.  The single largest expense is the cost of administering the notice process.  Plaintiffs' counsel contracted with a notice administrator called CPT Group to handle the mailing and notice administration, and the cost of that notice administration has been $61,591.94.  *See* **Ex. 2**, Feldman Dec. ¶ 48. Of the approximately $10,000 in remaining costs that Plaintiffs' counsel seeks, most of that is travel and lodging expenses for the January 30, 2023 in-person hearing before this Court on Reliant's motion for partial dismissal or to transfer venue, filing fees, and for the August 8, 2023 in-person mediation in Atlanta, with mediator A. Lee Parks.  *See* **Ex. 2**, Feldman Dec. ¶ 48 and exhibit 1 to dec.; **Ex. 3**, Declaration of Gregg Shavitz ("Shavitz Dec.") ¶ 26; **Ex. 4**, Martin Dec. ¶ 22; **Ex. 5** Declaration of Hillary Schwab ("Schwab Dec.") ¶ 14.

<u>**ARGUMENT**</u>

**I.**    <u>**A One-Step Approval Process is Standard and Appropriate for Certified FLSA Collective Settlements  Such as this One.**</u>

Throughout the country, a one-step approval process, rather than the two-step process for approval of Rule 23 class action settlements, is appropriate in FLSA settlements that do not include

classes under Federal Rule of Civil Procedure 23 ("Rule 23").[2]  This is because collective actions under 29 U.S.C. § 216(b) of the FLSA ("Section 216(b)") do not implicate the same due process concerns as Rule 23 class actions. *O'Connor v. Oakhurst Dairy*, No. 14 Civ. 00192, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."). "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Cunha v. Avis Budget Car Rental, LLC*, No. 16 Civ. 10545, 2016 WL 6304432, at *2 (D. Mass. Oct. 26, 2016) (internal quotation marks omitted); *Pike v. New Generation Donuts, LLC*, No. 12 Civ. 12226, 2016 WL 707361, at *3 (D. Mass. Feb. 20, 2016) (same); *O'Connor*, 2015 WL 2452678, at *4 ("[W]ith an opt-in collective action, only individuals who affirmatively chose to join the litigation will be bound by its outcome."); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 66 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]").

That is especially true in cases such as this one. where the Court has already conditionally certified the action to proceed collectively.  The only participants in this settlement are already Plaintiffs in this action and clients of undersigned Class Counsel by the execution of their Consent to Join forms.  Further, and more importantly, all these opt in party plaintiffs expressly agreed to be bound by a settlement reached by Plaintiff Haggerty and the Plaintiffs' attorneys.  No other employees,

---

[2]    *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision).");  *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *1-2 (D. Conn. May 23, 2013); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011); *Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825, at *1 (N.D. Ind. Jan. 31, 2011).

persons or prospective class members are going to be notified of this action other than these participating plaintiffs and clients of the plaintiffs undersigned attorneys of record.

Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23."); *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (due process concerns in Rule 23 class action are not present in FLSA collective action).

Because there is no Rule 23 class in this matter, the Court does not need to conduct a two-step fairness analysis of the settlement. Rather, the Court need only to analyze the settlement to ensure that it is fair and reasonable under the circumstances and then to approve it. *See*, *e.g.*, *Singleton v. AT&T Mobility Services, LLC*, 146 F. Supp.3d 258, 260 (D. Mass. 2015) ("The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'") (quoting *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

Plaintiff also notes that there is at least one case in which this Court has itself employed a single-stage approval process for an FLSA settlement. *See Rose v. Ruth's Hospitality Group, Inc.*, Civ. No. 07-12166-WGY (D. Mass) (Young, J.) (ECF. No. 72) (approving FLSA settlement in single stage). Accordingly, the parties here do not believe there is any need for a two-stage approval process as there would be in a Rule 23 action, nor would such an approach serve the interests of judicial economy.

## II.     The Settlement is Fair and Reasonable and Should be Approved.

In reviewing a proposed FLSA settlement, the Court considers whether that proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v.*

*Scholarship Storage Inc.*, No. 14 Civ. 303, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (internal quotation marks omitted); *see also Singleton v. AT&T Mobility Servs.*, *LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015) (same). When conducting this analysis, the Court must consider "the totality of circumstances including:  the value of plaintiff's maximum and minimum possible recoveries, the extent to which the settlement will enable the parties to avoid the burdens of litigation, the seriousness of the litigation risks faced by both parties, and whether the agreement is the product of an arm's-length negotiation between experienced counsel." *Binienda v. Atwells Realty Corp.*, No. CV 15-253 WES, 2018 WL 6266784, at *1 (D.R.I. Nov. 30, 2018).

In this context, courts typically approve wage and hour settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g.*, *Curtis*, 2016 WL 3072247 at *3; *Singleton*, 146 F. Supp. 3d at 260; *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014). If a proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement.  *Lynn's Food*, 679 F.2d at 1354 ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . we allow the district court to approve the settlement. . . ."); *Curtis,* 2016 WL 3072247, at *2 ("A court may approve a FLSA settlement if it is 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions'"); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements"); William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

**A.    The Settlement Provides for a Substantial Financial Recovery and Allows Plaintiffs to Forgo the Significant Risks of Continued Litigation.**

The $3,400,000.00 settlement is substantial, especially in light of the considerable risk Plaintiffs would face if they were to proceed to pursue their claims through litigation. First, the average net settlement award will be approximately $1,354.59 (after fees, service awards, and costs are subtracted out).[3] By Plaintiffs' estimate, this is a meaningful percentage of the collective members' lost wages. This is particularly true in light of the fact that even if Plaintiffs were to prove at trial that Defendant had a companywide practice of suffering or permitting therapists to work off-the-clock to meet their high-productivity requirements, there is still a reasonable chance that many members of the collective would recover little or nothing in the way of damages.

By Defendant's estimate, fewer than 900 members of the collective were "full time employees" who were routinely scheduled to work at least 35-hours per week and, as such, many members of the collective would not have overtime pay claims in many such weeks. (*See* Proposed Agreed Supplemental Discovery Plan and Amended Case Management Order, ECF No. 111 at 1 ¶ 1) (defining "full-time basis" for purposes of taking discovery in this litigation). Under the FLSA, employees are only entitled to recover compensation for unpaid overtime hours—*i.e.* hours over 40 worked in any work week—**not** all unpaid hours (unless there is a minimum wage issue, which is not at issue here). *See*, *e.g.*, *Mercado-Rodriguez v. Hernandez Rosario*, 150 F.Supp.3d 171, 173 (D.P.R. 2016) ("In this case, the Plaintiff cannot state a claim for relief under the FLSA because he did not work longer than forty hours a week."); *see also* 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation

---

[3]    The Gross Settlement Amount is $3,400,000. The attorney fee payment Plaintiffs' counsel is requesting is 1/3 of that amount, or $1,133,333.33. Plaintiffs' counsel is also seeking payment of $72,478.00 in expenses, and asking that the Court award a total of $14,000 in service payments for Named Plaintiff Haggerty, Plaintiff Doherty, Plaintiff Kendall, and Plaintiff Wang. $3,400,000 - $1,133,333.33 - $72,478.00 - $14,000.00 = $2,180,890.67. Given that there are a total of 1,610 plaintiff in this case, the average settlement amount is equal to $2,180,890.67 / 1610, which equals (to the nearest cent) **$1,354.59**.

for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."). A jury might very well find that Plaintiffs, or some considerable subset of them, worked less than five hours of unpaid overtime per week. And such a finding could result in zero or near-zero damages for more than half of the collective. Indeed, if the jury were to find average unpaid overtime of only 1-2 hours per week, then even some of the full-time employees would see their recoverable damages reduced dramatically, if not completely eliminated.

A similar risk arises from the fact that a jury might easily determine that Defendant had violated Plaintiffs' statutory rights, but that these violations were not "willful." Under the FLSA, the presumptive statute of limitations is two years, "unless the violations are shown to be willful, in which case a three-year period applies." *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1079 (1st Cir. 1995); citing 29 U.S.C. § 255(a). And to prove that a violation was willful, the plaintiffs have the burden of showing that their employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Id*. (quoting *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988)). This is not an easy burden to carry.

By Plaintiffs' estimate, about 330 opt-ins (about 20% of the collective) would recover **no damages at all** absent a willfulness finding—as they did not work for Reliant during the default two-year limitations period. And hundreds more would see their damages significantly reduced.

There is also considerable risk that Plaintiffs would not succeed in maintaining this case as a collective action through trial. Unlike conditional certification, which applies a lenient standard, at the second stage—decertification—the court "makes a comparatively searching 'factual determination' as to whether there are similarly-situated employees who have opted in.'" *Owens v. City of Malden*, 568 F. Supp. 3d 77, 108-9 (D. Mass. 2021) (Young, J.) (quoting *Rossello v. Avon Prod., Inc.*, Civ. No. 14-1815, 2015 WL 3890403, at *3 (D.P.R. June 24, 2015)) reversed on other grounds on appeal, No. 22-1674, 2023 WL 7125127 (1st Cir. Oct. 30, 2023). Defendant would likely argue that the differences between Plaintiffs—*e.g.*, their five different job titles, their disparate geographic locations, different

direct managers, and differences in whether and how frequently Plaintiffs met their productivity targets—warrant decertification of a collective.    While Plaintiffs disagree, they also recognize that defendants have prevailed on such arguments in certain other, similar contexts.  *See, e.g.*, *Crowe v. ExamWorks, Inc.*, 136 F.Supp.3d 16, 49-50 (D. Mass. Sept. 30, 2015) (individual issues regarding overtime hours worked and whether those hours were worked with a supervisor's knowledge or at a supervisor's direction predominated over any common questions under a Rule 23 class analysis); *Botero v. Commonwealth Limousine Serv.*, No. 12-cv-10428, 2014 WL 1248158, at *4 (D. Mass. Mar. 25, 2014) (denying conditional certification and noting that even if employer failed to pay every one of its chauffeurs at some point for time spent waiting with their vehicles, the circumstances surrounding each instance are different and not the result of a "single decision, policy, or plan that violated the law") (internal citation omitted).

A trial on the merits would also involve significant risks for Plaintiffs—not just as to damages, but on liability as well.  Plaintiffs here have not asserted that Defendant maintains any formal, written policy requiring them to work off the clock in order to meet productivity targets.  Instead, Plaintiffs assert that as a matter of policy and practice, Defendant encouraged and at least tacitly coerced such off-the-clock work, and suffered or permitted such work to occur.  The existence of an official policy is not necessarily required to prevail on an off-the-clock claim such as this.  *See, e.g.*, *Loy v. Rehab Synergies*, *L.L.C.*, 71 F.4th 329, 338 (5th Cir. 2023) (rejecting the proposition, in an appeal involving similar FLSA allegations, that "company policies requiring FLSA compliance and prohibiting off-the-clock work" are "dispositive given the evidence that Rehab Synergies also had an unwritten policy or practice of off-the-clock work.")  Establishing the existence of such an unwritten policy that applied to over 1,600 therapists necessarily requires significant fact development and would likely turn, at least at some level, on credibility determinations by the jury.  Plaintiffs firmly assert that such a policy of suffering or permitting therapists to work-off-the clock to try to hit high productivity targets was in place at Reliant.  But it is certainly possible that a jury would conclude otherwise, as Defendant

contends.  A jury might also conclude that Plaintiffs are only entitled to compensation for weeks in which they actually met or exceeded their productivity targets.  And based on the productivity data Reliant has provided to date, Plaintiffs acknowledge that there were many therapists who at least sometimes failed to meet their productivity targets, and some who frequently failed to meet those targets.

These very real risks make the current settlement even more fair and reasonable under the circumstances.

### B.  The Other Factors for the Court to Consider Plainly Weigh in Favor of Finding the Settlement Here to be Fair and Reasonable.

In addition to risk and value, other factors that courts consider in determining whether an FLSA settlement is fair and reasonable include "the extent to which the settlement will enable the parties to avoid the burdens of litigation," and "whether the agreement is the product of an arm's length negotiation between experienced counsel." *Binienda,* 2018 WL 6266784, at *1. These factors both support the finding that the settlement in this case is fair and reasonable.

In a case with this many Plaintiffs, working for Reliant in skilled nursing facilities across the country, continued litigation would necessarily create substantial burdens.  There would be significant numbers of depositions to take, considerable time and effort in litigating the scope of what is acceptably "representative" proof for a collective of this size, as well as the time and effort necessary to litigate dispositive motions and decertification.

With respect to arm's-length negotiation, there can be no real dispute that the parties engaged in arm's-length and good-faith negotiations and reached a mutually agreeable settlement after each party made several settlement proposals with the assistance of a qualified mediator.  Plaintiffs have fully considered the merits and potential value of their claims and determined that the proposed settlement provides a reasonable and fair resolution. Defendant supports this result, since it eliminates the risks, uncertainties, and costs of further litigation.

For all of these reasons, the parties' settlement agreement is fair and reasonable and should accordingly be approved by this Court.

**III.    The Service Awards to Plaintiffs should be Approved as Fair and Reasonable.**

Plaintiffs request approval of Service Awards of $5,000 for Named Plaintiff Haggerty and $3,000 each for Plaintiffs Wang, Kendall, and Doherty—for a total of $14,000 to be paid from the Gross Settlement Amount.  This is a very small fraction of the total settlement amount – 0.4% -- and is appropriate given that these Plaintiffs' efforts led to this great settlement for the collective members. Defendant does not oppose these requested service payments.

The Service Awards that Plaintiffs request are reasonable given the significant contributions these four individuals made to advance the prosecution and resolution of the lawsuit.  Each one of the four has served as a Named Plaintiff in either this case (Haggerty and Doherty), or in separate, overlapping actions that challenged the same basic conduct, and which were voluntarily dismissed in order to pool resources and advance Plaintiffs' claims in a single judicial forum (Wang and Kendall). Class and collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *Scovil*, 2014 WL 1057079, at *6 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."). This is especially true in employment litigation. *See Bozak*, 2014 WL 3778211, at *4 ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or coworkers." (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (internal quotation marks omitted))); *Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) (Young, J.) (in certifying class, noting that "fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis").

Service awards serve the important purpose of compensating plaintiffs for the time and effort

expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-2067, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014) ("The purpose of [] incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class."); *Bussie v. Allamerica Fin. Corp.*, No. 97 Civ. 40204, 1999 WL 342042, at *3-4 (D. Mass. May 19, 1999) (noting courts consider, *inter alia*, efforts of the named plaintiff in granting awards). Service awards are commonly awarded to those who serve the class's and collective's interests. *Scovil*, 2014 WL 1057079, at *6.

In this case, as described above, *see supra* at 5, Named Plaintiff Haggerty and Plaintiffs Kendall, Wang, and Doherty took substantial actions to protect the collective action members' interests, and those actions resulted in a substantial benefit. Moreover, the Service Awards Plaintiffs are requesting are modest, which weighs further in favor of their reasonableness. *Scovil*, 2014 WL 1057079, at *8 (approving $15,000 service awards to plaintiffs who provided assistance throughout the lawsuit and discussing comparable awards in other district courts); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12-cv-4494, 2015 WL 2255394, at *7 (S.D.N.Y. May 7, 2015) (approving $15,000 service to plaintiff for "participating in a lawsuit against her former employer and the efforts she made on behalf of the class"); *Dent v. ITC Serv. Grp., Inc.*, No. 12-cv-00009, 2013 WL 5437331, at *4, *9 (D. Nev. Sept. 27, 2013) (approving $15,000 award.").

## IV.    Attorneys' Fees and Costs Should be Approved as Fair and Reasonable

Plaintiffs' request for one third of the common fund settlement as attorneys' fees plus reasonable costs and expenses is also reasonable. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (same). This is "founded on the equitable

principle that those who have profited from litigation should share its costs." *Id.* at 305 n.6; *see also Boeing*, 444 U.S. at 478.

### A. The Requested 1/3 Fee is Reasonable

Although there are two ways to compensate attorneys for successful prosecution of statutory claims — the lodestar method and the percentage of the fund method, *see In re Thirteen Appeals*, 56 F.3d at 306-7 — courts generally favor awarding fees in common fund cases based upon a percentage of the fund. *Id.* at 307 (noting that "use of the percentage of the fund method in common fund cases is the prevailing praxis"). Attorney's fees awarded from a common fund should "'be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233 at 1244, (11th Cir. 2011) (quoting *Camden I Condo Assoc., Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991)*); *William S. v. Progressive Select Ins. Co.*, No. 19-cv-21760-WPD/Becerra, 2023 U.S. Dist. LEXIS 47560, at *10-11 (S.D. Fla. Mar. 20, 2023).

This is so because employing the percentage of the fund method in common fund cases promotes judicial economy. The percentage of the fund method promotes early resolution of cases, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See id.* ("using the [percentage of fund] method in a common fund case enhances efficiency . . . .); *see also Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "[f]rom the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model"). Where attorneys' fees are limited to a percentage of the total, there is a strong disincentive for attorneys "to be inefficient or to drag [their] feet in pursuing settlement options." *In re Thirteen Appeals*, 56 F.3d at 307. Moreover, the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *Id.* ("[T]he [percentage of the fund] method permits the judge to focus on a showing that the fund

conferring a benefit on the class resulted from the lawyers' efforts.") (internal quotation marks and citation omitted).

Adequate compensation promotes the availability of counsel for aggrieved persons. *Lunsford*, 2014 U.S. Dist. LEXIS 200716, at *32. *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362. "Lawyers who recover a "common fund" are entitled to reasonable attorneys' fees from the fund they created. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980). In common fund settlements, "[b]oth the United States Supreme Court and the Eleventh Circuit have expressly approved calculating [attorneys'] fees by applying the percentage-of-recovery method to the total value of the settlement." *Montoya v. PNC Bank, N.A.*, 2016 Del. LEXIS 14, 2016 WL 1529902, at *16 (S.D. Fla. April 13, 2016) (citing *Boeing v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980), and *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999)); *see Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("attorneys' fees awarded from a common fund shall be based on a reasonable percentage of the fund established for the benefit of the class."); *William S. v. Progressive Select Ins. Co.*, No. 19-cv-21760, 2023 U.S. Dist. LEXIS 47560, at *10-11 (S.D. Fla. Mar. 20, 2023). Fee requests of one-third of the common fund have been consistently approved by courts in this District as reasonable. *Barbosa v. Publishers Circulation Fulfillment, Inc.*, No. 08 Civ. 10873 (D. Mass Nov. 25, 2009) (Dein, M.J.) (approving one-third of $1.4 million settlement fund in wage case) (settlement approval motion at ECF No. 58); *Lapan v. Dick's Sporting Goods*, No. 13-cv-11390 (D. Mass. April 19, 2016) (approving one third of $3.3 million settlement plus costs and expenses in wage case) (settlement approval motion at ECF No. 215); *Anderson v. HomeDelivery*, No. 11 Civ. 10313 (D. Mass. Dec. 17, 2014) (approving one-third of $900,000 settlement fund in wage case) (final settlement approval motion at ECF No. 106).[4]

---

[4] *E.g.*, *Scovil,* 2014 WL 1057079, at *5 (approving one-third of $5.8 million settlement fund in misclassification case); *Matamoros v. Starbucks*, No. 08 Civ. 10772 (D. Mass. August 16, 2013) (approving one-third of $23.5 million settlement for settlement of wage claims of hourly-paid workers) (approval

Moreover, Plaintiffs' Counsels' request for one-third of the settlement fund as attorneys' fees and additional an additional $72,478.00 to reimburse out-of-pocket costs and litigation expenses is reasonable in light of the significant benefit their efforts conferred on the collective. The Settlement Agreement provides that Defendant will pay a maximum settlement amount of $3,400,000.00 to settle all claims against the collective.  This recovery is significant in light of the risk that litigation may have yielded little or no recovery at all.  Further, the Court should consider the unique settlement here, where Plaintiffs' attorneys are required to continue to counsel 1610 plaintiffs going forward for the next two years as they see through and ensure that the settlement payments are made and distributed timely and properly.

A lodestar "doublecheck" or "crosscheck" further confirms that the fees Plaintiffs are seeking from the common fund are reasonable.[5]  Within this Circuit, courts **may** look at counsel's lodestar fees to "doublecheck" the reasonableness of a percentage-of-common-fund fee award—though they are not required to do so.  *See Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass. 1998) (noting that lodestar method can be used to "doublecheck" the reasonableness of a fee); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) ("In the First Circuit, '[t]he lodestar approach . . . can be a check or validation of the appropriateness of the percentage of funds fee, but is not necessary.'").

To date, Plaintiffs' counsel's hours, multiplied by customary, reasonable hourly rates, comes out to $1,042,968, as set forth below:

---

motions at ECF Nos. 159 and 167); *Crenshaw v. Texas Roadhouse, Inc.*, No. 11-cv-10549 (D. Mass. Sept. 5, 2012) (approving one-third of $5 million settlement fund for wage claims of hourly-paid employees) (ECF No. 53); *Cutter v. HealthMarkets, Inc*., *et al*., No. 10 Civ. 11488 (D. Mass. Dec. 11, 2012) (approving one-third of common fund settlement in wage case) (approval motion at ECF No. 77); *Scovil*, 2014 WL 1057079, at *5 (taking judicial notice that a one-third common fund fee "is consistent with wage-and-hour settlements in the . . . jurisdiction of Massachusetts").

[5] The First Circuit does not require a court to cross check the percentage of fund against the lodestar in its determination of the reasonableness of the requested fee." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 81 (D. Mass. 2005) (*citing In re Thirteen Appeals*, 56 F.3d at 307).

| Firm | Timekeeper | Title | Years of experience | Hours | Rate | Fees |
|------|-----------|-------|--------------------|-------|------|------|
| Feldman Law Group ("FLG") | Mitch Feldman | Partner | 28 | 425 | $500 | $212,500 |
| FLG | Jason Quintus | Associate | 9 | 417 | $400 | $166,800 |
| Shavitz Law Group ("SLG") | Gregg Shavitz | Partner | 29 | 109.60 | $700 | $76,720 |
| SLG | Christine Duigan | Of Counsel | 32 | 25.00 | $650 | $16,250 |
| SLG | Loren Donnell | Of Counsel | 18 | 119.3 | $625 | $74,562.50 |
| SLG | Michael Palitz | Partner | 13 | 302.9 | $625 | $189,312.5 |
| SLG | Serena Eifert | Paralegal | 10 | 40.3 | $175 | $7,052.50 |
| Barrett Johnston Martin & Garrison, PLLC ("BJMG") | Jerry Martin | Partner | 24 | 30.9 | $700 | $21,630 |
| BJMG | Seth Hyatt | Partner | 11 | 232 | $500 | $168,250 |
| BJMG | Matthew McGraw | Associate | 10 | 4.5 | $385 | $1,732.50 |
| BJMG | Josh Frank | Associate | 9 | .6 | $385 | $231.00 |
| BJMG | Legal Assistants | Legal Assistant | N/A | 170.8 | $150 | $34,140 |
| Fair Work P.C. | Hillary Schwab | Partner | 25 | 10.4 | $700 | $7,280 |
| Total | | | | 2,160 hours | | $1,042,968 |

*See* **Ex. 2** Feldman Dec ¶ 46; **Ex. 3** Shavitz Dec. ¶ 28 ; **Ex. 4** Martin Dec. ¶ 17; **Ex. 5** Schwab Dec. ¶ 15.  Plaintiff's counsel further expect that a reasonable amount of additional time will be expended related to class settlement administration, communication with class members, etc., between now and when the final payments are made pursuant to the agreement.

As of now, the lodestar multiplier for the requested fee award would be approximately ~**1.09** [$1,133,333.33 / $1,042,968].  This multiplier is well within the range of reasonableness.  *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (approving fees with "fairly

common" lodestar multiplier of over 4); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming district court's fee award for which the lodestar cross-check resulted in a 3.65 multiplier). In fact, this ~1.09 multiplier is significantly lower than lodestar multipliers previously approved by this Court. *Conley*, 222 B.R. at 182 (approving lodestar multiplier of 8.9, even where plaintiffs' counsel were "piggybacking" on prior success by another plaintiffs' firm in a different case); *New England Carpenters,* 2009 WL 2408560, at *2 (awarding fees representing 8.3 lodestar multiplier). Moreover, the lodestar multiplier will decrease, because of the anticipated additional time that Plaintiffs' counsel will continue to spend on this case.

Accordingly, the fact that the one-third fee award would constitute a lodestar multiplier significantly below 3.0 further supports approving the fee award.

### B. Plaintiffs' Requested Award of Costs and Expenses is Reasonable

The settlement agreement also provides that Plaintiffs' counsel may request to be reimbursed out of the settlement fund for their litigation expenses. To date, Plaintiffs' counsel have incurred $72,478.00 in litigation expenses. The lion's share of this amount (more than 85%) is for a single expense item—*i.e.* the $61,591.94 expense of contracting with a vendor to send notice out to the approximately 19,000 potential opt-ins and managing the opt-in process. *See* **Ex. 2** ¶ 48. The remaining fees expenses that Plaintiff's counsel have incurred—working out to approximately $10,000 are associated with travel for a hearing before this Court, filing fees, travel for in-person mediation, and assorted, comparatively small costs for copying and mailing.

Expenses such as those sought in this case have been awarded as reasonable in other class actions in this District. *Carlson v. Target Enters., Inc.*, 447 F. Supp. 3d 1, 6 (D. Mass. 2020) (awarding expenses requested by Plaintiffs in class action for "costs associated with mediation, travel expenses, filing fees, and postage"); *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324 ("The listed expenses include, among other things, costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings. I find these expenses

reasonable and will allow the request."). These costs are quite modest for a collective action of this size and should be approved as reasonable.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court issue the proposed Order: (1) approving the $3,400,000.00 settlement as fair, adequate, and reasonable, as set forth in the Settlement Agreement and Release; (2) approving a total of $14,000.00 in services awards; (3) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees and additional costs and litigation expenses in the amount of $72,478.00; (4) incorporating the terms of the Settlement Agreement; and (5) dismissing this case with prejudice.

Dated:  December 4, 2023                    Respectfully submitted,

/s/ Michael Palitz
Michael Palitz
SHAVITZ LAW GROUP, P.A.
477 Madison Avenue, 6th Floor
New York, NY 10022
Tel: (800) 616-4000
Fax: (561) 477-8831
mpalitz@shavitzlaw.com

Hillary Schwab
FAIR WORK, PC.
192 South Street, Suite 450
Boston, MA 02111
Phone: (617)607-3261
Fax: (617)-488-2261
hillary@fairworklaw.com
www.fairworklaw.com

Jerry E. Martin (TN Bar No. 020193)
Seth M. Hyatt (TN Bar No. 031171)
BARRETT JOHNSTON MARTIN
& GARRISON, LLC
414 Union Street, Suite 900
Nashville, TN 37219
P: (615) 244-2202
F: (615) 252-3798
jmartin@barrettjohnston.com
shyatt@barrettjohnston.com

Mitchell L. Feldman
Florida Bar No.: 0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave., #101
Tampa, FL 33625
Phone: 813-639-9366
Fax: 813-639-9376
Mfeldman@flandgatrialattorneys.com

Loren B. Donnell
Gregg I. Shavitz
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite No. 285
Boca Raton, FL 33431
Tel: (561) 447-8888
Fax: (561) 447-8831
ldonnell@shavitzlaw.com
gshavitz@shavitzlaw.com

*Attorneys for Plaintiffs and Members of the Putative FLSA Collective*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 4, 2023, this document was filed via CM/ECF, and will be delivered electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/* Michael Palitz
Michael Palitz